Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Benjamin I. Sachs-Michaels
  bsachsmichaels@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
712 Fifth Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 935-7400

Attorneys for Plaintiff Dan Aptor

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN APTOR, Derivatively and for the Benefit of Nominal Defendant ONTRAK, INC., <br><br> Plaintiff, <br><br> v. <br><br> TERREN S. PEIZER, BRANDON H. LAVERNE, RICHARD A. BERMAN, MICHAEL SHERMAN, EDWARD ZECCHINI, DIANE SELOFF, ROBERT REBAK, GUSTAVO GIRALDO, KATHERINE QUINN, <br><br> Defendants. <br><br> and <br><br> ONTRAK, INC., <br><br> Nominal Defendant. | Case No. <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |

Plaintiff Dan Aptor ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Ontrak, Inc. ("Ontrak" or the "Company"), against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and contribution for violations of Section 10(b) of the Exchange Act. Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Ontrak with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.     NATURE AND SUMMARY OF THE ACTION

1.     Ontrak is a healthcare company that offers a Predict-Recommend-Engage platform that organizes and automates healthcare data integration and analytics. A critical component of this program is "Ontrak solutions," which are designed to provide healthcare solutions to members with behavioral conditions that cause or exacerbate chronic medical conditions.

2.     In November 2020, the Company disclosed that its largest customer, Aetna Inc. ("Aetna"), was conducting compliance reviews of its vendors, including Ontrak, "despite the customer having no compliance issues or concerns with Ontrak." The Company also stated that it expected "significant expansion" with this customer.

3.     In reality, Aetna had asked Ontrak to complete a corrective action plan and to submit information showing "meaningful measures" of the benefits of the Company's programs. The Company failed to complete this plan by the end of fiscal 2020 in time for Aetna to renew its contract, and by February 2021, Ontrak's CEO reportedly told employees that Aetna would not renew.

4.      While the truth remained undisclosed, Ontrak completed an offering of preferred stock, raising $42.8 million in gross proceeds.

5.      On March 1, 2021, Ontrak revealed that Aetna terminated its contract with the Company. Because Aetna "evaluated Ontrak on a provider basis," the Company's performance was evaluated "based on [its] ability to achieve the lowest possible cost per medical visit, and not on [its] clinical outcomes data or medical cost savings." As a result, the members would be transitioned out of Ontrak's services, and the Company reduced its fiscal 2021 revenue guidance.

6.      On this news, Ontrak's share price fell $27.32, or more than 46%, to close at $31.62 per share on March 1, 2021, on unusually heavy trading volume.

7.      These revelations precipitated the filing of a securities class action in this District against Ontrak and certain of its officers and directors, captioned *Farhar v. Ontrak, Inc., et al.*, Case No. 2:21-cv-01987 (the "Securities Class Action").

8.      Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board.  The Board is currently composed of eight members, all of whom are named in this action.  As alleged herein, defendant Peizer knowingly issued misleading statements, and the three members of the Audit Committee should have known of the misleading nature of the Company's public statements. Thus, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II.      JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: contribution for violations of Sections 10(b) of the Exchange Act.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(2) in that Plaintiff and Defendants are

citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

10.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

## III.   PARTIES

**Plaintiff**

12.     Plaintiff Dan Aptor purchased 100 shares of Ontrak stock in September 2020 and has continuously owned his Ontrak stock since that date. He currently holds 150 shares. He is a resident of Texas.

**Nominal Defendant**

13.     Nominal Defendant Ontrak is a Delaware corporation with its principal executive offices located at 2120 Colorado Ave., Suite 230, Santa Monica, CA 90404.  The Company's common stock trades on the NASDAQ exchange under the symbol "OTRK."

**Defendants**

14.     Defendant Terren S. Peizer ("Peizer") is the founder of Ontrak and served as the Chief Executive Officer ("CEO") of Ontrak from 2003 to April 12, 2021. He has been Chairman of the Company's Board since 2003. He is a majority shareholder of Ontrak as he owns 52.1% of the Company's outstanding stock as of June 10, 2021. Peizer is named as a defendant in the Securities Class Action. He is a resident of California.

15.     Defendant Brandon H. LaVerne ("LaVerne") has served as the Chief Financial Officer ("CFO") of Ontrak since 2020. He is named as a defendant in the Securities Class Action. He is a resident of Nevada.

16.     Defendant Richard A. Berman ("Berman") has served as a director of the Company since 2014. He is Chairman of the Audit Committee. He is a resident of Florida.

17.     Defendant Michael Sherman ("Sherman") has served as a director of the Company since 2017. He is a resident of New York.

18.     Defendant Edward Zecchini ("Zecchini") has served as a director of the Company since 2018. He is a resident of New York.

19.     Defendant Diane Seloff ("Seloff") has served as a director of the Company since 2018. She is a member of the Audit Committee. She is a resident of Tennessee.

20.     Defendant Robert Rebak ("Rebak") has served as a director of the Company since 2019. He is a resident of New Jersey.

21.     Defendant Gustavo Giraldo ("Giraldo") has served as a director of the Company since 2019. He is a member of the Audit Committee. He is a resident of Florida.

22.     Defendant Katherine Quinn ("Quinn") has served as a director of the Company since August 2020. She is a resident of Arizona.

23.     Defendants Peizer, LaVerne, Berman, Sherman, Zecchini, Seloff, Rebak, Giraldo, and Quinn are sometimes referred to hereinafter as the "Individual Defendants."

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of their positions as officers, directors, and/or fiduciaries of Ontrak and because of their ability to control the business and corporate affairs of Ontrak, at all times, the Individual Defendants owed Ontrak and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use

their utmost ability to control and manage Ontrak in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Ontrak and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Ontrak and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Ontrak, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Ontrak, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

26.     To discharge their duties, the officers and directors of Ontrak were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Ontrak were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

# V.    SUBSTANTIVE ALLEGATIONS

## A.    Background

27.    Ontrak is a healthcare company that offers a Predict-Recommend-Engage platform that organizes and automates healthcare data integration and analytics. A critical component of this program are Ontrak solutions, which are designed to provide healthcare solutions to members with behavioral conditions that cause or exacerbate chronic medical conditions.

28.    Ontrak's largest customer during the relevant period was Aetna, which accounted for nearly 64% of the Company's revenue for third quarter 2020 and for nearly half of the Company's revenue for fiscal 2020.

29.    In June 2020, Aetna asked Ontrak to complete a Corrective Action Plan ("CAP"), seeking "meaningful measures" of the benefits provided by Ontrak's services. It also required the Company to correct certain items, including providing evidence that Ontrak's care coaches actually led to members going to see therapists. However, the Company did not full complete the CAP or answer Aetna's questions.

30.    By the end of 2020, it became clear that the Company would not complete the CAP in time for Aetna to renew its contract with the Company. By February 2021, Ontrak's CEO sent a Company-wide email stating that he had just learned Aetna would not renew its contract.

## B.    The Individual Defendants Caused the Company to Issue Materially Misleading Statements

31.    On November 5, 2020, the Individual Defendants caused Ontrak to issue a press release announcing its third quarter 2020 financial results, touting revenue growth of 172% year-over-year and 39% quarter-over-quarter. It also stated that "Revenue Growth in 2021 [is] expected [to be] in excess of 100%." The press release also stated: "Ontrak's rapid engagement and enrollment of the members of one of our largest plan partners exceeded estimated rates to such an extent that they asked us to reschedule further enrollment to 2021 to allow their budget to catch up."

32.     The same day, the Company held a conference call to discuss the financial results with analysts and investors. During the call, defendant Peizer stated:

> Finally, with respect to other customer headwinds, and their impact on 2020 guidance; we would also like to point out that our largest customer is conducting compliance reviews of all of their vendors. These reviews have disrupted data refreshes for the Ontrak program since July, putting further pressure on our outreach poll numbers, ***despite the customer having no compliance issues or concerns with Ontrak***; data is our lifeline to engaging members and we are working closely together with our partner to ensure that we can meet the rapidly expanding needs of their members during this pandemic. ***Importantly, this is one of the plans for which we anticipate continued significant expansion***.

33.     Also on November 5, 2020, the Individual Defendants caused Ontrak to file its quarterly report on Form 10-Q for the period ended September 30, 2020 (the "3Q20 10-Q") with the SEC, affirming the previously reported financial results. It also provided the "following table [summarizing] concentration of credit risk by customer revenues as a percentage of [Ontrak's] total revenue:"

| Percentage of Revenue | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2020 | 2019 | 2020 | 2019 |
| Largest customer | 63.9 % | 45.6 % | 48.4 % | 33.6 % |
| 2nd largest customer | 13.6 | 15.2 | 15.1 | 20.1 |
| 3rd largest customer | 9.6 | 14.4 | 11.9 | 16.3 |
| 4th largest customer | 7.8 | 10.0 | 9.7 | 12.8 |
| Remaining customers | 5.1 | 14.8 | 14.9 | 17.2 |
| | 100.0 % | 100.0 % | 100.0 % | 100.0 % |

34.     Similarly, the 3Q20 10-Q stated:

> ***A substantial percentage of our revenues are attributable to four large customers, any or all of which may terminate our services at any time.***
>
> Four customers accounted for an aggregate of 95% and 85% of our total revenue for the three months ended September 30, 2020 and 2019, respectively, and four customers accounted for an aggregate of 85% and 83% of our revenue for the nine months ended September 30, 2020 and 2019, respectively. ***Also, four customers represented an aggregate of 100% and 89% of our total accounts receivable as of September 30, 2020 and December 31, 2019, respectively.*** We expect that

revenues from a limited number of customers will continue for the foreseeable future. Sales to these customers are made pursuant to agreements with flexible termination provisions, generally entitling the customer to terminate with or without cause on limited notice to us. ***We may not be able to keep our key customers, or these customers may decrease their enrollment levels.*** Any substantial decrease or delay in revenues relating to one or more of our key customers would harm our financial results. If revenues relating to current key customers cease or are reduced, we may not obtain sufficient enrollments from other customers necessary to offset any such losses or reductions.

(Second and third emphases added.)

35.     As to the efficacy of its programs, Ontrak's 3Q20 10-Q stated, in relevant part:

> ***Our programs may not be as effective as we believe them to be, which could limit our potential revenue growth.***
>
> Our belief in the efficacy of our Ontrak solution is based on a limited experience with a relatively small number of patients. Such results may not be statistically significant, have not been subjected to close scientific scrutiny, and may not be indicative of the long-term future performance of treatment with our programs. If the initially indicated results cannot be successfully replicated or maintained over time, utilization of our programs could decline substantially. There are no standardized methods for measuring efficacy of programs such as ours. ***Even if we believe our solutions are effective, our customers could determine they are not effective by utilizing different outcome measures.*** In addition, even if our customers determine our solutions are effective they may discontinue them because they determine that the aggregate cost savings are not sufficient or that our programs do not have a high enough return on investment. Our success is dependent on our ability to enroll third-party payor members in our Ontrak solutions. Large scale outreach and enrollment efforts have not been conducted and only for limited time periods and we may not be able to achieve the anticipated enrollment rates.

(Second emphasis added.)

36.     The above statements on November 5, 2020 were materially misleading because they failed to disclose: (i) that Ontrak's largest customer evaluated the COmpany on a provider basis, valuing Ontrak's performance based on achieving the lowest cost per medical visit rather than clinical outcomes or medical cost savings; (ii) that, as a result, Ontrak's largest customers did not find the Company's program to be effective and was reasonably likely to terminate its contract with Ontrak; (iii) that, because this customer accounted for a significant portion of the Company's

revenue, the loss of the customer would have an outsized impact on Ontrak's financial results; and (iv) that, as a result of the foregoing, Ontrak was unlikely to achieve revenue growth of 100% during fiscal 2021.

37.     On December 15, 2020, while the truth about Ontrak's relationship with Aetna remained undisclosed, the Company announced a public offering for 1,730,000 shares of 9.50% Series A Cumulative Perpetual Preferred Stock ("Series A preferred stock") with a liquidation preference of $25.00. The offering was priced at $24.75 per share. The offering closed on December 21, 2020, in which Ontrak raised gross proceeds of approximately $42.8 million.

**C.     The Truth Begins to Emerge**

38.     On March 1, 2021, Ontrak revealed that its largest customer had terminated its contract with the Company, effective June 26, 2021. Ontrak stated that this customer "evaluated Ontrak on a provider basis" and "[a]s such, the customer evaluated [Ontrak's] performance based on [its] ability to achieve the lowest possible cost per medical visit, and not on [its] clinical outcomes data or medical cost savings." The Company also stated that "the coaching model which Ontrak has pioneered for over a decade was seen by the customer to be less relevant to their performance metrics." In a press release "pre-announc[ing] its financial results" for fourth quarter and full year 2020, Ontrak stated, in relevant part:

> Mr. Peizer continued, "After a long process with our largest customer where we believed we were working towards an extended and expanded contract, we were notified after market close on February 26, 2021 that our participation status with this customer will be terminated effective June 26, 2021. ***We were advised to stop enrollment of new members for this customer and await guidance from the customer on transition plans for the 8,400 members who are currently benefiting from the Ontrak program.*** We remain fully committed to the health plan and to its members, and will ensure that every member receives quality care through the transition, so that pandemic-related anxiety is not heightened by the change in the member's care team."
>
> Mr. Peizer added, "***The relationship with our Ontrak-A customer was unique, because they evaluated Ontrak on a provider basis, not as a vendor as do all of our other health plan partners. As such, the customer evaluated our performance based on our ability to achieve the lowest possible cost per medical visit, and not on our clinical***

*outcomes data or medical cost savings, which were meaningful and significant.* Unlike our other health plan partners, we interacted only with the behavioral health division, with no involvement from the medical division of the plan. *We believe that the coaching model which Ontrak has pioneered for over a decade was seen by the customer to be less relevant to their performance metrics.* We have consistently found that our care coaches have a tremendously positive impact on member experience and readiness to engage with the healthcare system. This is the reason that many digital healthcare apps are now building care coaching into their products. . . ."

\*       \*       \*

**Fourth Quarter 2020 and Recent Operating Highlights:**

- Total enrolled members increased to 15,702 at the end of Q4 2020 and stands at 15,822 as of today.

- Effective Outreach Pool of approximately 152,000 at the end of Q4 2020.

- Gross enrollment for the two-month period ended February 28, 2021, excluding the Ontrak-A customer, was 2,683, reflecting a 60% annualized enrollment rate.

(Emphases added.)

39.    The Company also stated that it no longer expected 100% revenue growth for fiscal 2021. The same press release provided the following outlook, highlighting the impact of the loss of the customer:

**For the year ending December 31, 2021, the Company provides the following outlook:**

- Revenue of $100 Million. Initially, we were going to guide to 100% growth with revenues of $165 million. *In light of Ontrak-A, we hopefully are being conservative with our $100 million revenue guidance.* Of that number, approximately $88 million is either already under contract or in the signature phase and those health plan partners are already contemplating further expansions. Moreover, we see tremendous upside with large plans in our pipeline.

- Given the strength of our pipeline, we anticipate returning to a 100% revenue growth rate in 2022.

40.    On this news, Ontrak's share price fell $27.32, or more than 46%, to close at $31.62 per share on March 1, 2021, on unusually heavy trading volume.

41.    On March 9, 2021, Ontrak announced its fourth quarter and full year 2020 financial results, affirming the pre-announced results. The Company also held

a conference call to discuss the results with analysts and investors, during which defendant Peizer acknowledged that "[t]he most significant headwind is the Aetna contract termination in June." He stated that the Company "will continue to graduate and disenroll members through the end of June."

42.     During the same call, defendant LaVerne provided additional detail about the Aetna contract and the impact of the loss, stating:

> In 2020, Aetna represented 58% of total revenue. At the end of 2020, they represented approximately 82% of the outreach pool and 61% of members. During the fourth quarter, the revenue was also 58% of total revenue, yet represented 66% of the average member count. What this demonstrates is that our average revenue per member during the quarter was less for this customer than the remainder of the business.
>
> As I said before, the revenue per member for all of 2020 was $7,200. Yet excluding Aetna members, it was nearly $9,500. While the outreach pool will be significantly impacted by the loss of this customer, the remaining outreach pool should have a significantly increased enrollment rate.

43.     Expanding on the significance of viewing Ontrak as a provider, defendant Peizer stated during the conference call:

> [B]ecause we're classified as a provider, ***we were seen as an expensive provider*** because where our program might seem expensive. But as I pointed out earlier, we're really the lowest cost provider because our savings is so much greater than the actual cost of the program. So like all of our -- as I mentioned last week and today, we work with the medical side on all of our health plans.
>
> That's what distinguishes this from -- Aetna from the others in our relationship. So we're going to endeavor to engage those that this matters. And believe me, there are people at Aetna and there are people at CVS who bought Aetna that care about the whole health and integrated care of these membership populations.

44.     On March 16, 2021, the Company announced that Peizer was stepping down as CEO. He was named Executive Chairman.

45.     On May 6, 2021, Ontrak announced its first quarter 2021 financial results, which discussed the decline in members following the loss of the customer as well as a reduction in workforce. Ontrak also reduced its revenue outlook for fiscal 2021, expecting "$80-85 million, reflecting current expectations with our

existing health plan customers regarding outreach pool, budget considerations and timing of expansions." The Company's press release stated, in relevant part:

**First Quarter 2021 and Recent Operating Highlights:**

- Total enrolled members numbered 14,868 at the end of Q1 2021 and decreased to 12,376 as of the date of this release. The transitional disenrollment of members in our Ontrak-A program began in April, and we expect to disenroll the remaining 4,160 Ontrak-A members by the end of June.

- The Company initiated a reduction in workforce as a result of the termination notice from Ontrak-A. The workforce reduction plan, which was designed to effectively align our resources, manage our operating costs, and address the change in staffing needs in the short term, affected approximately 35% of full time positions. We incurred $1.0 million in the current period and estimate $0.3 million to be incurred in the second quarter, with the plan expected to reduce annual compensation expense by approximately $17 million, primarily in cost of revenue.

## VI.   DAMAGES TO THE COMPANY

46.     As a direct and proximate result of the Individual Defendants' conduct, Ontrak has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

(a)    Legal fees incurred in connection with the Securities Class Action;

(b)    Any funds paid to settle the Securities Class Action; and

(c)    Costs incurred from compensation and benefits paid to the defendants who have breached their fiduciary duties to Ontrak.

47.     In addition, Ontrak's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

48.     The actions complained of herein have irreparably damaged Ontrak's corporate image and goodwill. For at least the foreseeable future, Ontrak will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the

investing public, such that Ontrak's ability to raise equity capital or debt on favorable terms in the future is now impaired.

**VII.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

49.     Plaintiff brings this action derivatively in the right and for the benefit of Ontrak to redress injuries suffered, and to be suffered, by Ontrak as a direct result of breaches of fiduciary duty by the Individual Defendants and contribution for violations of Section 10(b) of the Exchange Act.  Ontrak is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

50.     Plaintiff will adequately and fairly represent the interests of Ontrak in enforcing and prosecuting its rights.

51.     Plaintiff has continuously been a shareholder of Ontrak at times relevant to the wrongdoing complained of and is a current Ontrak shareholder.

52.     When this action was filed, Ontrak's Board consisted of defendants Peizer, Berman, Giraldo, Quinn, Rebak, Seloff, Sherman, and Zecchini.  Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Defendant Peizer**

53.     Peizer is the founder, executive chairman, and former CEO of Ontrak, and therefore is not independent under NASDAQ listing rules, as Ontrak concedes in its proxy statement. As an executive chairman, Peizer is an employee of Ontrak, and thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis.  Moreover, as alleged herein, Peizer personally issued the misleading statements alleged herein and is named as a defendant in the Securities Class Action.  As a result, Peizer would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

**Defendants Berman, Seloff, and Giraldo**

54.    Berman, Seloff, and Giraldo served as members of the Audit Committee at all relevant times.  As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations.  As a result of their review of the Company's financial statements and internal reports, Berman, Seloff, and Giraldo knew, or were reckless in not knowing, that Aetna (the customer accounting for 58% of Ontrak's revenue in fiscal 2020) evaluated the Company as a provider, which was different from the rest of the Company's customers, and that this presented a risk as to whether Aetna would continue its relationship with Ontrak. As alleged herein, Berman, Seloff, and Giraldo failed to ensure the integrity of the Company's internal controls, allowing the materially misleading statements to be disseminated in Ontrak's SEC filings and other disclosures.  Thus, Berman, Seloff, and Giraldo breached their fiduciary duties and are not interested, and demand is excused as to them.

## COUNT I

### Against Defendants Peizer and LaVerne for Breach of Fiduciary Duty

55.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

56.    Defendants Peizer and LaVerne each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Ontrak's business and affairs, particularly with respect to issues as fundamental as public disclosures.

57.    The conduct of Defendants Peizer and LaVerne  set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  Defendants Peizer and LaVerne intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Ontrak.

58.     In breach of their fiduciary duties owed to Ontrak, defendants Peizer and LaVerne willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

59.     In particular, defendants Peizer and LaVerne knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

60.     As a direct and proximate result of the breaches of their fiduciary obligations by defendants Peizer and LaVerne, Ontrak has sustained and continues to sustain significant damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

### Against Defendants Berman, Giraldo, Quinn, Rebak, Seloff, Sherman, and Zecchini for Breach of Fiduciary Duty

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     Defendants Berman, Giraldo, Quinn, Rebak, Seloff, Sherman, and Zecchini each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Ontrak's business and affairs, particularly with respect to issues as fundamental as public disclosures.

63.     The conduct of defendants Berman, Giraldo, Quinn, Rebak, Seloff, Sherman, and Zecchiniset forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  Defendants Berman, Giraldo, Quinn, Rebak, Seloff, Sherman, and Zecchini intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Ontrak.

64.     In breach of their fiduciary duties owed to Ontrak, defendants Berman, Giraldo, Quinn, Rebak, Seloff, Sherman, and Zecchini willfully participated in and

caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

65.     In particular, defendants Berman, Giraldo, Quinn, Rebak, Seloff, Sherman, and Zecchini knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

66.     As a direct and proximate result of the breaches of their fiduciary obligations by defendants Berman, Giraldo, Quinn, Rebak, Seloff, Sherman, and Zecchini, Ontrak has sustained and continues to sustain significant damages. Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT V

**Against Defendants Peizer and LaVerne for Contribution for Violations of Sections 10(b) and 21D of the Exchange Act**

67.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

68.     Defendants Peizer and LaVerne are named as defendants in related securities class action. The conduct of these Defendants, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

69.     Ontrak is named as a defendant in related securities class actions that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Ontrak is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through

their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

70.     As officers, directors and otherwise, defendants Peizer and LaVerne had the power or ability to, and did, control or influence, either directly or indirectly, Ontrak's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

71.     Defendants Peizer and LaVerne are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

72.     Defendants Peizer and LaVerne have damaged the Company and are liable to the Company for contribution.

73.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of Ontrak, demands judgment as follows:

A.     Declaring that plaintiff may maintain this action on behalf of Ontrak and that plaintiff is an adequate representative of the Company;

B.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.     Declaring that Defendants have breached their fiduciary duties to Ontrak;

D.     Directing Ontrak to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Ontrak and its stockholders from a repeat of the damaging events described

herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

       1.    a proposal to strengthen the Company's controls over financial reporting;

       2.    a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

       3.    a proposal to strengthen Ontrak's oversight of its disclosure procedures;

       4.    a provision to control insider transactions; and

       5.    a provision to permit the stockholders of Ontrak to nominate at least three candidates for election to the Board;

E.    Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Ontrak has an effective remedy;

F.    Awarding to Ontrak restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.    Granting such other and further relief as the Court deems just and proper.

## __JURY DEMAND__

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

DATED:  August 6, 2021         GLANCY PRONGAY & MURRAY LLP

By:  _/s/ Pavithra Rajesh_
Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  rprongay@glancylaw.com
           prajesh@glancylaw.com

Benjamin I. Sachs-Michaels
712 Fifth Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 935-7400
Email: bsachsmichaels@glancylaw.com

_Attorneys for Plaintiff Dan Aptor_

## <u>ONTRAK, INC. VERIFICATION</u>

I, Dan Aptor, do hereby verify that I am a holder of common stock of Ontrak, Inc. and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint (the "Complaint"). I have reviewed and authorized the filing of the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge, and with respect to the remainder of the averments, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 7/28/2021 _____

_____
Dan Aptor